ELECTRONIC CITATION:  2006 FED App. 0006P (6th Cir.)
File Name:  06b0006p.06

## BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

In re

UNITED PRODUCERS, INC. and
PRODUCERS CREDIT CORP.,

Debtors.

_____

G.E. CATTLE CO., GERALD and NANCY EGGERLING,
JAMES and MARCELLA EGGERLING,
EGGERLING FARMS, INC., R L FINANCIAL, INC.,
RICK and DIANE KUCHTA, KUCHTA FARMS, INC.,
RANDY OERTWICH d/b/a Oertwich Farms, Inc.,
CURREYS OF NEBRASKA, INC., PRODUCERS
LIVESTOCK CREDIT CORP., and HARRY HAYES,

Appellants,

v.                                                                                     No. 05-8077

UNITED PRODUCERS, INC. and
PRODUCERS CREDIT CORP.,

Appellees.

_____

Appeal from the United States Bankruptcy Court
for the Southern District of Ohio, Eastern Division.
Nos. 05-55272 and 05-55273, Jointly Administered

Submitted: August 18, 2006

Decided and Filed: October 6, 2006

Before: GREGG, PARSONS, and WHIPPLE, Bankruptcy Appellate Panel Judges.

––––––––––––––––––––

**COUNSEL**

**ON BRIEF:** James F. Cann, DOMINA LAW GROUP, Omaha, Nebraska, for Appellants. Philip F. Downey, Randall D. LaTour, VORYS, SATER, SEYMOUR & PEASE, Columbus, Ohio, for Appellees.

––––––––––––––––––––

**OPINION**

––––––––––––––––––––

MARCIA PHILLIPS PARSONS, Bankruptcy Appellate Panel Judge. Presently before the Bankruptcy Appellate Panel ("BAP") is the Appellees' motion for an order dismissing this appeal of the bankruptcy court's plan confirmation orders because of equitable mootness. For the reasons discussed below, the motion is GRANTED and this appeal is hereby DISMISSED.

## I. ISSUE

The issue before the Panel is whether the Panel can grant effective relief to the Appellants in this appeal without affecting the success of the Appellees' substantially consummated plan or the rights of third parties not before the court.

## II. JURISDICTION

The BAP has jurisdiction to decide this appeal. The United States District Court for the Southern District of Ohio has authorized appeals to the BAP, and a final order of the bankruptcy court may be appealed by right under 28 U.S.C. § 158(a)(1). An order, for the purpose of an appeal, is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989). The bankruptcy court's orders overruling the Appellants' objections and confirming the Appellees' joint plan are final orders. *See Sanders Confectionary Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992) ("Confirmation of a plan of reorganization constitutes a final judgment in bankruptcy proceedings.").

2

### III.   FACTS AND PROCEDURAL HISTORY

United Producers, Inc. ("UPI") is an agricultural cooperative that provides farm financing through its subsidiary Producers Credit Corp. ("PCC").  Both entities filed for bankruptcy relief under chapter 11 on April 1, 2005; their bankruptcy cases were jointly administered; and they filed a joint, and subsequently amended, plan of reorganization.  The Appellants, holders of prepetition judgments against UPI in the approximate amount of $17 million for fraud, breach of contract, conversion, and Packers and Stockyards Act violations arising out of cattle marketing, objected to the amended plan on numerous grounds, including the assertions that the plan had not been proposed in good faith, failed to provide them with more than they would receive in a liquidation under chapter 7, was not feasible, and otherwise was not fair and equitable with respect to the Appellants' class of claims.  11 U.S.C. § 1129(a)(3), (7), (11) & (b)(1) and (2).  The Appellants also objected on the basis that the continuance of UPI's current management, due to their prepetition misconduct which led to Appellants' judgments, was inconsistent with the interests of creditors and equity security holders and with public policy.  11 U.S.C. § 1129(a)(5)(A).

After a confirmation hearing on September 28 and 29, 2005, the bankruptcy court entered an order on September 30, 2005, finding that the amended plan met all the confirmation standards of the Bankruptcy Code and directing the submission of a separate confirmation order.  Subsequently, on October 6, 2005, the court entered an order confirming the amended plan.  The Appellants timely appealed both the September 30 and October 6, 2005 orders ("Confirmation Orders"), but did not seek a stay of the orders.

On November 21, 2005, the chapter 11 debtors, the Appellees herein, moved to dismiss this appeal as equitably moot.  They asserted that the confirmed plan has been substantially consummated and that the reversal of the Confirmation Orders as sought by the Appellants would both adversely affect third parties not before the court and the success of the consummated plan.  Because the Appellants disputed these contentions, this Panel on February 27, 2006, remanded this case to the bankruptcy court for a determination of whether the plan has been substantially consummated and the extent of any reliance by third parties upon the steps taken to implement the plan.  *See In re Hamady Bros. Food Mkts., Inc.*, 110 B.R. 815, 818-19 (E.D. Mich. 1990) (remand

appropriate where factual disputes existed as to whether post-confirmation plan transactions could be undone and if the interests of third parties would be impaired by doing so).

On July 6, 2006, after an evidentiary hearing on June 29, 2006, at which the sole witness was Dennis Bolling, president and chief executive officer of both Appellees, the bankruptcy court entered an order entitled "Supplemental Findings and Conclusions Regarding Order of Remand of the Bankruptcy Appellate Panel." The court concluded in the order that "the Amended Plan has been substantially consummated" and "innocent third parties have relied on the significant steps taken to implement the Amended Plan to their detriment." Upon the transmittal of that order to this Panel, we entered an order giving the parties an opportunity to file supplemental briefs regarding the Appellees' motion to dismiss. Such briefs have now been filed.

## IV. DISCUSSION

"Applied principally in bankruptcy proceedings because of the equitable nature of bankruptcy judgments," the doctrine of equitable mootness has been described as a "pragmatic principle, grounded in the notion that, with the passage of time after a judgment in equity and implementation of that judgment, effective relief on appeal becomes impractical, imprudent, and therefore inequitable." *MAC Panel Co. v. Virginia Panel Corp.*, 283 F.3d 622, 625 (4th Cir. 2002). In the context of a confirmed chapter 11 plan, application of the "doctrine seeks to prevent parties from upsetting a plan of reorganization once it is well underway." *In re Arbors of Houston Assocs. Ltd. P'ship*, 172 F.3d 47 (Table), 1999 WL 17649 (6th Cir. Jan. 4, 1999). In this circuit, an appellate court asked to dismiss an appeal for equitable mootness must consider the following factors: (1) whether a stay has been obtained; (2) whether the plan has been substantially consummated; and (3) most importantly, whether the relief requested would affect the rights of parties not before the court or the success of the plan. *In re Am. HomePatient, Inc.*, 420 F.3d 559, 563-64 (6th Cir. 2005) (adopting factors espoused by the Fifth Circuit in *In re Manges*, 29 F.3d 1034 (5th Cir. 1994)).

Applying these factors, it is undisputed that no stay of the Confirmation Orders was sought by the Appellants. In their supplemental brief opposing the dismissal motion, the Appellants state

that a stay was "an impossibility for the appealing parties in view of the cost of a bond." Regardless of the accuracy of this assertion, the Appellants correctly point out that "the failure to seek a stay . . . is not necessarily fatal to the appellant's ability to proceed." *In re Am. HomePatient, Inc.*, 420 F.3d at 564 (quoting *City of Covington v. Covington Landing Ltd. P'ship*, 71 F.3d 1221, 1225 (6th Cir. 1995)).

> Requesting a stay is not a mandatory step comparable to filing a timely notice of appeal. The significance of an application for a stay lies in the opportunity it affords to hold things in stasis, to prevent reliance on the plan of reorganization while the appeal proceeds. . . . *And, it is the reliance interests engendered by the plan, coupled with the difficulty of reversing the critical transactions, that counsels against attempts to unwind things on appeal.*

*City of Covington*, 71 F.3d at 1226 (quoting *In re UNR Indus., Inc.*, 20 F.3d 766, 769-770 (7th Cir. 1994)).

The second factor, whether the plan has been substantially consummated, was disputed by the Appellants when the Appellees first filed their motion to dismiss. However, the Appellants' supplemental brief does not address the issue, and the bankruptcy court noted in its July 6, 2006 order that the Appellants conceded substantial consummation of the plan during the June 29, 2006 evidentiary hearing. Notwithstanding Appellants' concession, the bankruptcy court's order details in twenty numbered paragraphs "the most significant actions" taken by the debtors to implement the plan during the nine months between the entry of the Confirmation Orders and the evidentiary hearing. These actions include the termination and issuance of new membership interests in UPI; the collection by UPI of $495,000 in new membership fees and $400,000 in new per unit retains; the liquidation and dissolution of the related entity UPHC, LLC, which permitted the transfer to UPI of 14 parcels of real property and capital stock; the cancellation of UPI's 100 shares of common stock in PCC and the issuance of 100 new shares; the cancellation of 208 shares of PCC's preferred stock held by Southern States Cooperative, Inc.; the closing and funding of exit financing by CoBank in the amount of $75 million, secured by UPI's new stock in PCC and various mortgages, permitting the Appellees to pay off the debtor-in-possession loan and fund plan distributions; the settlement of a $5 million claim against the Appellees and final distribution on that claim; plan distribution to priority and general unsecured creditors which "represent[ed] the distribution of

approximately all of the remaining balance in the pool . . . established to pay claims; and the sale by UPI of its West Plains, Missouri facility.

The Bankruptcy Code defines "substantial consummation" as "(A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan." 11 U.S.C. § 1101(2). The Appellees argue in their supplemental brief that the evidence produced at the hearing establish that all three of these elements have been satisfied. They note that "all property contemplated to be transferred by the Plan has been transferred; that "the debtors under the Plan have assumed the businesses and the management of all property not to be transferred under the plan"; and that "distribution under the Plan not only has been commenced but in fact has completed." As noted, the Appellants do not dispute these contentions in their supplemental brief and it appears from a comparison of the plan with the findings of fact set forth in the bankruptcy court's July 6, 2006 order that the Appellees are correct.

The primary point of contention and the "most important factor" in the equitable mootness analysis according to the Sixth Circuit Court of Appeals is whether the relief requested would affect either the rights of parties not before the court or the success of the plan. *See In re Am. HomePatient*, *Inc*., 420 F.3d at 564. The bankruptcy court in its July 6, 2006 order answered both of these questions in the affirmative. The court noted that both of the Appellees have continued their business operations and "provide essential services to approximately 68,000[] third parties, primarily farmers and meat processing companies." According to the bankruptcy court, the exit financing utilized by the Appellees would be in jeopardy if confirmation of their joint plan were reversed and there would be no way for Appellees to continue payments that are due to approximately 68,000 farmers. The court found that the Appellees' daily sales volume is approximately $3 million; the sum of $9 million in checks is outstanding at any time; and if the exit financing were frozen, the clearance of these checks would no longer be assured and substantial harm to customer confidence would likely result. The bankruptcy court also found that packing customers who rely upon UPI for delivery of livestock would be adversely affected by any

6

disruption in business and in turn might not be able to deliver to their grocery store and restaurant clients. The court observed that approximately 68,000 farmers have received notice of confirmation and in reliance thereon have begun paying new membership fees and per unit retains to UPI. According to the bankruptcy court, PCC has approximately $68 million in loans in place for crops and livestock, and any reversal of confirmation with the related lack of financing would render PCC unable to continue loan funding to farmers and possibly render it more difficult for PCC to collect payments on existing loans. In the court's view, reversal of confirmation could necessitate the recovery of the significant distributions that had already been made to administrative, priority and general unsecured creditors and potentially upset the new stock and membership interests that have been issued in reliance on confirmation of the amended plan. In conclusion, the bankruptcy court stated:

> [T]he vacation of the confirmation order at this late point, will place the business operations of UPI and PCC [in] jeopardy, and make the continuation of services to their approximately 68,000[] customers difficult if not impossible. Further, legal issues over the validity of transactions and distributions that were made in reliance upon confirmation will arise. The Appellants did not present any evidence to the contrary, or clearly articulate how the confirmation order can be vacated, at this late juncture, without causing substantial harm to the businesses and innocent third parties.

The Appellees cite the foregoing findings and conclusions by the bankruptcy court in support of their assertion that the third factor in the equitable mootness test has been satisfied. According to Appellees, "the Plan has now been completed and final distribution has been made in each case" and "[n]othing could affect more adversely a fully completed and successful Plan than to unravel it completely and totally start over, as Appellants urge in this appeal." Similarly, the Appellees argue that the farmers who depend upon UPI's markets and PCC's financing should not be put at risk "by the reversal of a confirmed plan that has already resulted in a successful reorganization."

In response, the Appellants recount the alleged fraud which led to the judgments they hold against UPI and "vigorously" raise again the merits of their objections to confirmation. According to Appellants, "[n]o one will be hurt by vacating the confirmation order except UPI's senior management" and "[r]eversal can occur without any adverse consequence to others." In support

of these propositions, Appellants assert that consummation of the plan has resulted in no changes in the Appellees' business operations other than to rid UPI of Appellants' judgments; the exit financing with CoBank is simply a refinancing on the same terms of the debtors' prepetition debt; the retirement of old stock in PCC and the issuance of new stock is strictly one of form rather than substance; the sale of property by UPI was not pursuant to the plan; the merger that resulted in the elimination of UPI's subsidiary was inconsequential because the company had been inactive previously; and the plan changed nothing in the relationship between UPI and its owners. Appellants contend that the cross-examination of Mr. Bolling at the evidentiary hearing confirmed that if the plan were set aside, "members would continue to get the same goods and services during a renewed administration period of bankruptcy" and "CoBank's debt would remain in place."

As to Appellants' contentions which they assert where confirmed by Mr. Bolling's cross-examination, it must be observed that this alleged testimony is contrary to the bankruptcy court's supplemental findings and conclusions set forth in the July 6, 2006 order. Because no transcript of the evidentiary hearing has been provided to the Panel, it is difficult for this Panel to independently evaluate the legitimacy of the Appellants' assertions. *Cf. Knowles Bldg. Co. v. Zinni* (*In re Zinni*), 261 B.R. 196, 201-02 (B.A.P. 6th Cir. 2001) (failure of appellant to provide transcript "may hinder its ability to argue that bankruptcy court made an unsupported finding or fact or conclusion of law"). Nonetheless, we do not find it determinative that there may be no significant change in the Appellees' business operations or that if plan confirmation were reversed, members would continue to receive the same goods and services and CoBank's debt would remain in place. Reorganized debtors generally operate the same type of business post-confirmation. The difference is that because of plan confirmation and consummation, the Appellees' pre-confirmation liabilities have now been satisfied and numerous third parties have transacted business in reliance on confirmation. Old membership interests have been cancelled; new membership interests have been issued and fees collected; the reorganized PCC has made new loans; stock has been cancelled; new stock issued; and even a subsidiary liquidated which resulted in the transfer of 14 parcels of real property and capital stock. Contrary to the Appellants' assertions, we are not convinced that these transactions were merely form rather than substance. Indeed, they establish the unavoidable

8

conclusion that the relief requested by the Appellants would affect the rights of third parties that have relied upon implementation of the confirmed plan.

Just as importantly, although we are sympathetic to the Appellants who will only receive pennies on the dollar under the confirmed plan, we do not see how we can grant the Appellants any relief in this appeal, even if we were to find their claims meritorious, without unraveling the entire confirmed plan. Each of the objections to the plan asserted by the Appellants, and consequently the issues raised by them in this appeal, pertain to the heart and entirety of the plan, i.e., good faith, best interests, feasibility, violation of the fair and equitable rule, and the inappropriateness of retaining current management, rather than one discrete aspect. In fact, it is clear from the Appellants' briefs that they seek reversal of confirmation and a return of the bankruptcy case to its preconfirmation status, not piecemeal modification. *See In re Am. HomePatient*, *Inc.*, 420 F.3d at 563 (quoting *In re Eagle Picher Indus., Inc.*, 172 F.3d 48 (Table), 1998 WL 939869, at *4 (6th Cir. Dec. 21. 1998) ("[W]hen determining the mootness of an appeal of a bankruptcy reorganization order, this Court inquires as to whether the plan has been substantially consummated at the time of the appeal, and if so, whether piecemeal modification of the bankruptcy reorganization plan is possible or desirable.")). Because the requested relief cannot be granted without totally dismantling the substantially consummated plan, the conclusion is inescapable that this appeal is equitably moot. *Cf. In re Am. HomePatient*, *Inc.*, 420 F.3d at 564-565 (appeal not equitable moot where consideration of amount of allowed secured claim and appropriate interest rate could be made without thwarting the plan's other terms or affecting the debtor's obligations to third parties); *In re Arbors of Houston Assocs. Ltd. P'ship*, 1999 WL 17649, *3 (court declined to apply doctrine of equitable mootness because appellants did not seek to upset the plan and court could determine whether appellant had a security interest in a particular piece of realty without affecting or upsetting the plan itself); *In re Manges*, 29 F.3d at 1043 (appeal dismissed on equitable mootness where "we doubt seriously that we could place the estate or the parties back into the status quo as it existed before the confirmation order if we were to unravel the plan at this time"); *In re Ormet Corp.*, 2:04-CV-1151, 2005 WL 2000704, *8 (S.D. Ohio Aug. 19, 2005) (citing *In re Roberts Farm, Inc.*, 652 F.2d 793, 797 (9th Cir. 1981) (appeal dismissed as equitably moot where reversal would "'knock the props out' from under the reorganization plan" that had been relied upon by third parties to their

9

detriment)); *In re Block Shim Dev. Co.-Irving*, 113 B.R. 256, 262 (N.D. Tex. 1990) (appeal not equitably moot where it was possible to adjust partners' rights in the easement without impacting the reorganization scheme).

## V. CONCLUSION

In sum, this appeal is equitably moot because the Appellants failed to obtain a stay of the Confirmation Orders, the Appellees' joint plan has been substantially consummated, and the requested relief would adversely affect third parties not before the court that have relied upon the plan's implementation and otherwise unravel the Appellees' reorganization efforts. Accordingly, this appeal is DISMISSED.