ELECTRONIC CITATION:  2008 FED App. 0015P (6th Cir.)
File Name:  08b0015p.06

## BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

| | | |
|---|---|---|
| In re:  SHAWN  E.  PETRO  and CLARA A. PETRO, | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| HENRY    EDWARD    HILDEBRAND, STANDING CHAPTER 13 TRUSTEE, | ) | No. 08-8009 |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SHAWN E. PETRO and CLARA A. PETRO, | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

Appeal from the United States Bankruptcy Court
for the Middle District of Tennessee at Nashville.
No. 07-06638.

Argued:  August 13, 2008

Decided and Filed:  October 17, 2008

Before: FULTON, McIVOR, and SHEA-STONUM, Bankruptcy Appellate Panel Judges.

_____

### COUNSEL

**ARGUED:** Henry E. Hildebrand, III, OFFICE OF CHAPTER 13 TRUSTEE, Nashville, Tennessee, for Appellant.  Richard Haywood Thomson, CLARK & WASHINGTON, Atlanta, Georgia, for Appellees.  Michael E. Ridgway, EXECUTIVE OFFICE FOR UNITED STATES TRUSTEES, DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus Curiae.  **ON BRIEF:** Henry E. Hildebrand, III, Tracy L. Schweitzer, OFFICE OF CHAPTER 13 TRUSTEE, Nashville, Tennessee, for Appellant.  Mary Beth Ausbrooks, CLARK & WASHINGTON, Nashville, Tennessee, for

Appellees. P. Matthew Sutko, Thomas C. Kearns, EXECUTIVE OFFICE FOR UNITED STATES TRUSTEES, DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus Curiae.

---

## OPINION

---

MARILYN SHEA-STONUM, Bankruptcy Appellate Panel Judge. The Chapter 13 Trustee appeals an order of the bankruptcy court confirming the Debtors' Chapter 13 plan over the Trustee's objection that the Debtors were not contributing all of their projected disposable income to the payment of their unsecured creditors. For the reasons that follow, we REVERSE the decision of the bankruptcy court and REMAND for further proceedings consistent with this opinion.

### I.   ISSUES ON APPEAL

Whether the bankruptcy court erred in its interpretation of § 1325(b)(1)(B) when it determined that, for an above-median income debtor, "projected disposable income" is based on a mechanical application of the provisions of § 1325(b)(1) and (2)?

Whether the bankruptcy court erred in finding the plan was proposed in good faith pursuant to § 1325(a)(3)?

### II.   JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to decide this appeal because the United States District Court for the Middle District of Tennessee has authorized appeals to the Bankruptcy Appellate Panel for the Sixth Circuit and neither party elected to have this appeal heard by the district court. 28 U.S.C. § 158(b)(6), (c)(1). A bankruptcy court's final order may be appealed as of right. 28 U.S.C. § 158(a)(1). A final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S.Ct. 1494, 1497 (1989)(citations omitted). The bankruptcy court's order confirming the debtors' plan is a final order. *See G.E. Cattle, Co. v. United Producers, Inc. (In re United Producers, Inc.)*, 353 B.R. 507 (B.A.P. 6th Cir. 2006), *aff'd,* 526 F.3d 942 (6th Cir. 2008).

The bankruptcy court's decision with respect to the calculation of *projected disposable income* is a question of statutory interpretation. Questions of statutory interpretations are questions

-2-

of law reviewed de novo. "De novo means that the appellate court determines the law independently of the trial court's determination." *Treinish v. Norwest Bank Minn., N.A. (In re Periandri)*, 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001) (citation omitted). "No deference is given to the trial court's conclusions of law." *Booher Enters. v. Eastown Auto Co. (In re Eastown Auto Co.)*, 215 B.R. 960, 964 (B.A.P. 6th Cir. 1998).

The bankruptcy court's decision with respect to whether the plan has been proposed in good faith is reviewed under the clearly erroneous standard. *Ed Schory & Sons, Inc. v. Francis (In re Francis)*, 273 B.R. 87, 89 (B.A.P. 6th Cir. 2002). A bankruptcy court's finding of fact should not be disturbed simply because another trier of fact might construe the facts differently or reach a different conclusion. *See Anderson v. City of Bessemer*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511 (1985). It is not sufficient that it might have reached a different result if it had been the trier of fact; a reviewing court should uphold a finding of fact unless, on the entire evidence, it "is left with the definite and firm conviction that a mistake has been committed." *United States v. Matthews (In re Matthews)*, 209 B.R. 218, 219 (B.A.P. 6th Cir. 1997) (quoting *Anderson,* 470 U.S. at 573.)).

## III.   FACTS

Shawn and Clara Petro (the "Debtors") filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on September 12, 2007 (the "Petition Date"). The Debtors' income is above the median income for a family of their size in Tennessee. Schedules I and J, filed on the Petition Date, show monthly income of $7,891.33 and expenses of $6,505, for a total net monthly income of $1,386.33. Form B22C, the means test form, shows the Debtors' "current monthly income" to be $6,786.67, and after subtracting the deductions set forth in § 707(b), the monthly disposable income to be negative $670.66. The difference in the two net income numbers is the result of the Debtors' unemployment for a portion of the six month period prior to the Petition Date. The Debtors filed a Chapter 13 plan proposing to make monthly payments of $1,439.75 to the Trustee for 60 months from which the Trustee is to pay the holders of administrative, priority, secured and unsecured claims. Upon completion of the plan, holders of general unsecured claims would have received approximately $316 per month, or $19,000 total, resulting in a 23% distribution on account of their claims.

The Chapter 13 trustee (the "Trustee") objected to confirmation arguing that the Debtors' plan should not be confirmed because it fails to provide that all of the Debtors' *projected disposable income* would be applied to make payments to unsecured creditors under the plan as required by § 1325(b)(1). The bankruptcy court confirmed the Debtors' plan over the Trustee's objection because it viewed the calculation of projected disposable income to be the product of the application of a strictly mathematical formula and the Debtors' actual net income as irrelevant for the purposes of plan confirmation. The Trustee timely appealed the bankruptcy court's decision and argues that the calculation of the Debtors' projected disposable income should be forward looking, and begin, but not end, with the provisions of § 1325(b)(2).

The Trustee also argued that the plan should not be confirmed because it was not proposed in good faith, which the Trustee argued is evidenced by the Debtors' retention of a significant portion of actual disposable income. The Court overruled the Trustee's objection regarding good faith because it found the Debtors proposed a plan which followed the statutory instruction provided by Congress with respect to payments to unsecured creditors.

## IV.   DISCUSSION

### A. Projected Disposable Income

If a Chapter 13 trustee objects to confirmation, a proposed plan cannot be confirmed unless it provides, as of the effective date of the plan, "that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B) (2005). Before BAPCPA was enacted, "disposable income" was defined as "income which is received by the debtor and which is not reasonably necessary to be expended . . . for the maintenance and support of the debtor or a dependent of the debtor . . . ." 11 U.S.C. § 1325(b)(2)(A) (1994). Generally, a debtor's disposable income was determined by subtracting the expenses listed on Schedule J from the income listed on Schedule I[1] and, for purposes of determining

---

[1]Parties in interest were free to challenge the information listed on a debtor's Schedule I or J. *See, e.g., In re McKown*, 227 B.R. 487 (Bankr. N.D. Ohio 1998) (Schedule J monthly mortgage payments on real property in which debtors did not reside were challenged as not being "reasonably necessary for the maintenance or support" of debtors or their dependents).

whether a debtor was using all of his "projected disposable income" to fund a plan, the difference between Schedule I and J was multiplied by the proposed length of the debtor's plan. *See, e.g., In re Norris*, 165 B.R. 515 (Bankr. M.D.Fla. 1994).

BAPCPA changed the Code's definition of "disposable income" through amendments to § 1325(b)(2). Pursuant to those amendments, "disposable income" for above-median income debtors is "current monthly income,"[2] less specific expenses enumerated in § 707(b)(2)(A) and (B). 11 U.S.C. § 1325(b)(2)(A), (b)(3) (2005). *See also In re Fuller*, 346 B.R. 472, 476 (Bankr. S.D.Ill. 2006). Thus, with the enactment of BAPCPA the definition of "disposable income" changed. This has given rise to much debate about whether the meaning of the phrase "projected disposable income" has also changed. *See Coop v. Frederickson (In re Frederickson)*, 375 B.R. 829, 833 (B.A.P. 8th Cir. 2007).

The question raised in this appeal is one of statutory interpretation. Therefore, our analysis of the question is framed by certain canons of statutory construction. The language of the statute should be the starting point. "When 'the statute's language is plain, the sole function of the courts'-at least where the disposition required by the text is not absurd-'is to enforce it according to its terms.'" *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 1947 (2000) (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030 (1989)). However, in the "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters . . . the intention of the drafters, rather than the strict language, controls." *Ron Pair Enterprises, Inc.*, 489 U.S. at 242-3 (citation omitted). Moreover, "if the language in the statute is not clear, courts may resort to the legislative history to ascertain the meaning of the language." *United States v. Boucha*, 236 F.3d 768, 774 (6th Cir. 2001).

The word "projected" has more than one definition, and two of those definitions point in opposing directions in interpreting the statutory phrase – projected disposable income. One can project mechanically, assuming stasis, i.e., no change, or one can project based upon an examination of factors likely to be in operation through the projection period. This complicates the issue before us because the "plain meaning" of the phrase depends on which definition is applied to it. In such

---

[2]"Current Monthly Income" is defined in § 101(10A) as the average monthly income received by the debtor over the 6 month period prior to filing for bankruptcy relief.

circumstances, the court's role in interpreting the statute has been summarized by one of the pioneers of commercial statutory drafting, Karl Llewellyn:

> If a statute is to make sense, it must be read in the light of some assumed purpose. A statute merely declaring a rule, with no purpose or objective, is nonsense. If a statute is to be merged into a going system of law, moreover, the court must do the merging, and must in so doing take account of the policy of the statute.

Karl N. Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons about How Statutes are to be Construed,* 3 Vand. L. Rev. 395 (1950), *reprinted in* 2A Sutherland Statutory Construction § 48A:8 (7th ed. 2007). Although ambiguous when read in isolation, statutory provisions can often be clarified by reading them in the context of the statutory scheme as a whole. *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60, 125 S.Ct. 460, 467 (2004); *see also Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S.Ct. 843, 846 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.").

In addition, "[e]very word and clause must be given effect." Llewellyn, *supra* at p. 767. If a statute uses a particular phrase in one section, but not in another, courts should assume the inclusion or exclusion to have been intentional. *See City of Chicago v. Envtl. Def. Fund*, 511 U.S. 328, 338, 114 S.Ct. 1588, 1593 (1994). These canons of statutory interpretation frame our analysis of the issue before us.

Some courts considering the issue raised in this appeal have determined that projected disposable income is simply the product of disposable income, as calculated pursuant to § 1325(b)(2), and the applicable commitment period. *See Maney v. Kagenveama (In re Kagenveama)*, —F.3d —, 2008 WL 2485570 (9th Cir. June 23, 2008). The Ninth Circuit described this interpretation as giving "meaning to every clause and word of a statute.*" Id.* at *2 (citation omitted).

> Section 1325 uses the term "disposable income" in only two places- § 1325(b)(1)(B) ("projected disposable income") and § 1325(b)(2) (defining "disposable income"). The substitution of any data not covered by the § 1325(b)(2) definition in the "projected disposable income" calculation would render as surplusage the definition of "disposable income" found in § 1325(b)(2). There can be no reason for § 1325(b)(2) to exist other than to define the term "disposable income" as used in § 1325(b)(1)(B). "If 'disposable income' is not linked to 'projected disposable income' then it is just a floating definition with no apparent purpose." *In re Alexander,* 344 B.R. 742, 749 (Bankr. E.D. N.C. 2006). The plain meaning of the word "projected,"

in and of itself, does not provide a basis for including other data in the calculation because "projected" is simply a modifier of the defined term "disposable income." Therefore, to give meaning to every word of § 1325(b), "disposable income," as defined in § 1325(b)(2), must be "projected" in order to derive "projected disposable income."

Furthermore, "projected disposable income" has been linked to the "disposable income" calculation before BAPCPA. Any change in how "projected disposable income" is calculated only reflects the changes dictated by the new "disposable income" calculation; it does not change the relationship of "projected disposable income" to "disposable income."

*Id.* at *2-3. This approach, however, does not read the amendments to § 1325(b) as part of the statute as a whole, in light of its purpose or in a manner that gives effect to every word and clause.

The amendments to the Bankruptcy Code adopted in 2005 were made to an existing body of law and, with respect to the changes in § 1325(b), with the purpose of requiring "above-median income debtors to make more funds available to their unsecured creditors." *See, e.g., AmeriCredit Fin. Servs. Inc. v. Long (In re Long)*, 519 F.3d 288, 297 (6th Cir. 2008) (citing *Dewsnup v. Timm*, 502 U.S. 410, 419, 112 S.Ct. 773 (1992)); *Babin v. Wilson (In re Wilson)*, 383 B.R. 729, 733 (B.A.P. 8th Cir. 2008); *see also Ransom v. MBNA Am. Bank, N.A. (In re Ransom)*, 380 B.R. 799, 808 (B.A.P. 9th Cir. 2007) ("To interpret the statute otherwise is counterintuitive to one of the main objectives of BAPCPA: to ensure that debtors repay as much of their debt as reasonably possible."). Further, amendments to the Bankruptcy Code should be read in the context of its remedial purpose. *See, e.g.*, *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699 (1934) (The bankruptcy laws are designed to "relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh."); *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 659 (1991) (acknowledging that a "central purpose of the [Bankruptcy] Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort unhampered by the pressure and discouragement of preexisting debt.'" (quoting *Local Loan Co.*, 292 U.S. at 244)).

The mechanical approach ignores the policy behind the amendments to this section of the Bankruptcy Code and the remedial nature of the code, generally. Acceptance of the mechanical

approach would place some debtors in a "catch 22" where they are neither eligible for Chapter 7 nor capable of proposing a feasible, confirmable plan.

> "Projected disposable income" will be substantially the same as "disposable income" in many cases since the debtor's actual income often is the same as his current monthly income. However, the proper calculation of "projected disposable income" becomes an issue, and in particular whether it is calculated using "current monthly income" or actual income, when the debtor's actual income has either substantially increased or decreased around the time of filing.

*In re Zimmerman*, 2007 WL 295452, *4 (Bankr. N.D. Ohio Jan. 29, 2007). In these circumstances,

> Rigid adherence to a debtor's prepetition income history would commonly produce results at odds with both congressional purpose and common sense. If a debtor's prepetition averaged income was significantly higher than the debtor's income at plan confirmation, statutory indifference to the change at confirmation would doom any chapter 13 plan. Conversely, if, as here, a debtor's prepetition averaged income was significantly lower than his or her income at plan confirmation, the debtor would be granted a windfall. As a result, unless a debtor's prepetition averaged income was substantially the same as it was at plan confirmation, either creditors would be cheated or, by dint of plan failure, neither the debtor nor the creditors would obtain the benefits that Congress intended for both under chapter 13 of the Bankruptcy Code. We find it unlikely that Congress intended either result. The intent of Congress can be best gleaned by examination of the legislative history surrounding the enactment of BAPCPA:
>
> > The heart of [BAPCPA's] consumer bankruptcy reforms consists of the implementation of an income/expense screening mechanism ("needs-based bankruptcy relief" or "means-testing"), *which is intended to ensure that debtors repay creditors the maximum they can afford.*
>
> H.R.Rep. No. 109-31, pt. 1, at 2 (2005) (emphasis supplied). The words "maximum" and "afford" tell the story. Congress intended that debtors pay the greatest amount within their capabilities. Nothing more; nothing less.

*Kibbe v. Sumski (In re Kibbe)*, 361 B.R. 302, 314 (B.A.P. 1st Cir. 2007).

The mechanical approach does not give meaning to "every word and clause." It ignores the words and phrases "as of the effective date of the plan" and "to be received." *See, e.g., In re Hardacre*, 338 B.R. 718, 723 (Bankr. N.D. Tex. 2006). Prior to BAPCPA the schedules were a starting point and courts gave meaning to the words "projected" and "to be received" by taking into account a debtors' anticipated future income. BAPCPA's change to the definition of disposable income may have changed the starting point, but it should not be viewed as changing the need to give meaning to the rest of the language in § 1325(b)(1)(B).

The Court must give meaning to the word "projected," as it obviously has independent significance. The word "projected" means "[t]o calculate, estimate or predict (something in the future), based on present data or trends." Thus, the word "projected" is future oriented. By definition under § 1325(b)(2), the term "disposable income" is oriented in historical numbers. By placing "projected" next to "disposable income" in § 1325(b)(1)(B), Congress modified the import of "disposable income." The significance of the word "projected" is that it requires the Court to consider both future and historical finances of a debtor in determining compliance with § 1325(b)(1)(B).

To require all debtors to propose plans paying the number resulting from Form B22C would essentially ignore the word "projected" and give meaning to only the term "disposable income." The only way for the word "projected" to have independent significance is if the word modifies the term "disposable income."

*In re McCarty*, 376 B.R. 819, 824 (Bankr. N.D. Ohio 2007). Such an interpretation "provides a critical meaning to the term 'projected' which [a strictly mathematical interpretation] would dwarf."

*In re Kibbe*, 361 B.R. at 308.

In addition, the phrase "to be received" suggests a forward looking approach was intended. If Congress had intended that projected disposable income for plan purposes be based solely on prepetition average income, this language would be superfluous. This suggests that Congress intended to refer to the income actually to be received by the debtor during the commitment period, rather than prepetition average income.

*In re Hardacre,* 338 B.R. at 723.

Finally, the statute directs the Court to consider the contribution of projected disposable income "as of the effective date of the plan." 11 U.S.C. § 1325(b)(1). As a result the inquiry should be focused on the reality of a debtor's income and expenses as of confirmation. In circumstances where a debtor's actual income reflected on Schedule I and J does not vary significantly from the disposable income shown on Form 22, the distinction will be one generally without a difference. However, in cases such as the one at issue here,

where the debtor's income at confirmation or as reasonably anticipated for the plan commitment period is materially different from the debtor's "disposable income" as defined by § 1325(b)(2), the court must depart from the Form B22C calculation. The calculation of disposable income according to Form B22C can not be determinative of the debtor's "projected disposable income" because it does not take into account the debtor's circumstances as of the petition date or foreseeable changes in circumstances in income during the plan commitment period.

*In re Kibbe*, 361 B.R. at 314-5. That is not to say that Schedule I and J provide the total answer either. Schedule I and J capture a snapshot as of the date of filing for relief under the Bankruptcy

Code. Thus, anticipated changes in income, such as those that result from retirement or bonuses, may not be accurately reflected on Schedules I and J. A debtor's projected disposable income should be calculated based on the realities of the debtor's circumstances as of confirmation and as reasonably anticipated to be during the length of the plan. In this case, the bankruptcy court's mechanical application of the statute failed to take into account the Debtors' actual ability to contribute to the plan. Therefore, we reverse and remand to the bankruptcy court for a determination consistent with this opinion.

### B. Good Faith

The bankruptcy court overruled the Trustee's objection to good faith based on its finding that the Debtors' proposed plan contributed all projected disposable income and complied with all aspects of 11 U.S.C. § 1325. The Trustee appealed this finding. However, in light of our ruling with respect to the calculation of projected disposable income, we will not reach the merits of the Trustee's appeal on the issue of good faith.

### V. CONCLUSION

For the reasons set forth above, the decision of the bankruptcy court is REVERSED and REMANDED for further proceedings consistent with this opinion.