ELECTRONIC CITATION:  2008 FED App. 0017P (6th Cir.)
File Name:  08b0017p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

In re:   GORDON THOMAS, JR. and )
        DORIS ANN THOMAS, )
         )
        Debtors. )
_____ )
         )
HENRY E. HILDEBRAND, III, TRUSTEE, )
         )      No. 08-8014
        Appellant, )
         )
        v. )
         )
GORDON  THOMAS,  JR.  and  DORIS  ANN )
THOMAS, )
         )
        Appellees. )
         )
_____

In re:   ANTHONY    SHANE JONES and )
        SHANA LEE JONES, )
         )
        Debtors. )
_____ )
         )
HENRY E. HILDEBRAND, III, TRUSTEE, )
         )      No. 08-8015
        Appellant, )
         )
        v. )
         )
ANTHONY SHANE JONES and SHANA LEE )
JONES, )
         )
        Appellees. )
         )
_____

1

Appeal from the United States Bankruptcy Court
for the Middle District of Tennessee.
Bankruptcy Case Nos. 07-07019; 07-06686.

Argued: August 12, 2008

Decided and Filed: October 31, 2008

Before: GREGG, McIVOR, and SHEA-STONUM, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:** Henry E. Hildebrand, III, CHAPTER 13 TRUSTEE, Nashville, Tennessee, for
Appellant. J. Robert Harlan, ATTORNEY AT LAW, Columbia, Tennessee, for Appellees. Michael
E. Ridgway, EXECUTIVE OFFICE FOR UNITED STATES TRUSTEE, DEPARTMENT OF
JUSTICE, Washington, D.C., for Amicus Curiae. **ON BRIEF:** Henry E. Hildebrand, III,
CHAPTER 13 TRUSTEE, Nashville, Tennessee, Tracy L. Schweitzer, COUNSEL TO THE
TRUSTEE, Nashville, Tennessee, for Appellant. J. Robert Harlan, ATTORNEY AT LAW,
Columbia, Tennessee, for Appellees. Beth Roberts Derrick, OFFICE OF THE UNITED STATES
TRUSTEE, DEPARTMENT OF JUSTICE, Nashville, Tennessee, for Amicus Curiae.

_____

**OPINION**
_____

        MARCI B. McIVOR, Bankruptcy Appellate Panel Judge.  In these consolidated appeals,
Henry E. Hildebrand, the chapter 13 Trustee (the "Trustee"), appeals the orders confirming the
Debtors' chapter 13 plans on the grounds that the Debtors did not commit all of their projected
disposable income to unsecured creditors under their plans.  For the reasons stated below, the Panel
affirms in part and reverses in part the judgment of the bankruptcy court.  The Panel remands the
cases for findings of fact on the issue of projected disposable income consistent with this ruling and
the recent ruling in *Hildebrand v. Petro* (*In re Petro*), 2008 WL 4601471 (B.A.P. 6th Cir. Oct. 17,
2008).

## I.   ISSUE ON APPEAL

The issue raised in this consolidated appeal is whether the bankruptcy court erred in holding that above-median income Debtors may claim secured debt expense deductions for collateral they intend to surrender through their chapter 13 plans.

## II.   JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Middle District of Tennessee has authorized appeals to the Panel, and a final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1).  For purposes of appeal, a final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 798, 109 S.Ct. 1494, 1497 (1989) (citations and internal quotation marks omitted).  A bankruptcy court's order confirming a chapter 13 plan is a final, appealable order.  *Tidewater Fin. Co. v. Curry* (*In re Curry*), 347 B.R. 596, 598 (B.A.P. 6th Cir. 2006), *aff'd*, 509 F.3d 735 (6th Cir. 2007).

The appeal of the orders confirming the chapter 13 plans presents a question of law which is reviewed de novo. *First Union Mortgage Corp. v. Eubanks* (*In re Eubanks*), 219 B.R. 468, 469 (B.A.P. 6th Cir. 1998).  "'De novo review requires the Panel to review questions of law independent of the bankruptcy court's determination.'" *Id.* (citation omitted).  A bankruptcy court's determination of whether a debtor acted in good faith is a finding of fact which is reviewed on appeal for clear error. *Alt v. United States* (*In re Alt*), 305 F.3d 413, 420 (6th Cir. 2002).  Findings of fact "'will only be clearly erroneous when, although there may be some evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Id.* at 422 (quoting *United States v. Latouf*, 132 F.3d 320, 331 (6th Cir. 1997)) (additional citation and internal quotation marks omitted).

3

### III. FACTS

#### *Hildebrand v. Thomas* (*In re Thomas*)

Debtors Gordon Thomas, Jr. and Doris Ann Thomas filed a joint petition for relief under chapter 13 of the Bankruptcy Code on September 26, 2007. Schedules I and J show a combined average monthly income of $3,886, average monthly expenses of $2,803, and a monthly net income of $1,083. The Debtors' Schedule D lists the following secured claims: 1) $28,311 held by GMAC on a 2004 Chevrolet Silverado; 2) $24,311 held by GMAC on a 2005 Pontiac Grand Am; and 3) $27,000 held by National Car Credit Inc. on a 2006 Monte Carlo. The Debtors indicated their intent to surrender the three vehicles on Schedule D and in their chapter 13 plan.

The Debtors filed Form 22C, "Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income," in accordance with 11 U.S.C. § 521 and Fed. R. Bankr. P. 1007(b)(6). Because their yearly income exceeded the state median income for a family of four they were required, pursuant to 11 U.S.C. § 1325(b)(2) and (3), to calculate disposable income in accordance with § 707(b)(2)(A) and (B). On line 47 of Form 22C, the Debtors took deductions totaling $1,344.10 for monthly payments on the three vehicles they intended to surrender.[1] After deducting all of their expenses, the monthly disposable income as reflected on line 58 of Form 22C was a negative $468.30.[2] The Debtors' chapter 13 plan provides for weekly payments of $250 for 60 months with general unsecured creditors receiving not less than 20%.

#### *Hildebrand v. Jones* (*In re Jones*)

Debtors Anthony Shane Jones and Shana Lee Jones filed a voluntary chapter 13 petition on September 13, 2007. Schedules I and J show a combined average monthly income of $5,087, average monthly expenses of $3,527, and a monthly net income of $1,560. Schedule D lists a debt to America's Servicing Company of $126,684, secured by a home and lot located at 511 Spring

---

[1]$1,344.10 is the sum of the monthly car payments on the vehicles to be surrendered.

[2]The most recent version of Form 22C became available in January 2008. On the updated Official Form 22C, monthly disposable income is stated on line 59 rather than on line 58.

Valley Drive in Columbia, Tennessee. The Debtors indicated their intent to surrender the Columbia property on Schedule D and in their chapter 13 plan.

The Debtors' Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income, Form 22C, established that the Debtors' annualized household income was above the applicable median family income for a family of three in Tennessee. On line 47 of Form 22C, the Debtors listed a $1,007 deduction for monthly mortgage payments made to America's Servicing Company on the Columbia property. Their monthly disposable income reflected on line 58 of Form 22C was $168.41. The Debtors' chapter 13 plan provides that Mr. Jones will pay to the Trustee $200 weekly and Mrs. Jones will pay $321 bi-weekly over 60 months (totaling approximately $1,442 per month) with unsecured creditors receiving not less than a 20% dividend on their claims.

The Trustee objected to confirmation of both plans on the grounds that the Debtors were not committing all of their projected disposable income to the plans as required under 11 U.S.C. § 1325(b)(1)(B). The Trustee argued that the Debtors should not be permitted to claim a secured debt expense deduction for collateral the Debtors intend to surrender. In addition, the Trustee argued in *In re Jones* that the plan was not proposed in good faith. A single bench decision overruling the Trustee's objections was issued in the two cases. The court found that the means test set forth in § 707(b)(2)(A)(iii) was a mechanical formula that compelled the Debtors to deduct amounts scheduled as contractually due on secured debt payments owed as of the date the petition was filed, regardless of whether the Debtors intend to surrender the collateral in the future. Confirmation orders were entered in both cases.

On appeal, the Trustee contends that the bankruptcy court erred by finding that the Debtors had a right to claim expenses for secured debt payments when the Debtors were surrendering the collateral which secured the debts. It is the position of the Trustee that a forward projection of expenses is required when calculating disposable income under § 1325(b)(2) and that only actual expenses should be deducted. Without the deductions for secured debt payments the Debtors will

not make, the Trustee contends that the Thomases' could pay unsecured creditors in full and the Joneses' could pay unsecured creditors a dividend of 51%. It is unclear from the record how the Trustee calculated this dividend.

## IV.    DISCUSSION
### A.  Disposable Income

The narrow issue in this appeal requires the Panel to consider how disposable income should be calculated under 11 U.S.C. § 1325(b)(2).[3] The language of the statute is the starting point for the court's interpretation. *Robiner v. Danny's Markets, Inc.* (*In re Danny's Markets, Inc.*), 266 F.3d 523, 525 (6th Cir. 2001). Where the statute's language is clear, "'the sole function of the courts is to enforce it according to its terms.'" *United States v. Ron Pair Enter., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194 (1917)). The court may look beyond the text of the statute only when the language is ambiguous or when, "a literal interpretation would lead to internal inconsistencies, an absurd result, or an interpretation inconsistent with the intent of Congress." *Vergos v. Gregg's Enter., Inc.*, 159 F.3d 989, 990 (6th Cir. 1998). With these principles of statutory construction in mind, this Panel must discern the intent of Congress as it relates to the calculation of disposable income under § 1325(b)(2) and the Debtors' ability to deduct secured debt payments for collateral the Debtors intend to surrender.

While the two cases before this Panel are chapter 13 bankruptcies, it is important to understand that the statute which gives rise to the surrender issue is 11 U.S.C. § 707(b). On April 20, 2005, Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA").[4] One of the primary purposes of the act was to create a "means test" or mechanical formula by which courts could determine whether a filing was presumptively an abusive filing. *Schultz v. U.S.*, 529 F.3d 343, 347 (6th Cir. 2008) ("The centerpiece of the Act is the imposition of

---

[3]The broader issue of how projected disposable income is calculated under 11 U.S.C. § 1325(b)(1)(B) is beyond the scope of this opinion but is the subject of a companion case, *In re Petro*, 2008 WL 4601471 (B.A.P. 6th Cir. Oct. 17, 2008) recently issued by the BAP.

[4]Most of the BAPCPA provisions took effect on October 17, 2005.

a 'means test' for Chapter 7 filers, which requires would-be debtors to demonstrate financial eligibility to avoid the presumption that their bankruptcy filing is an abuse of the bankruptcy proceedings."). The methodology of the means test is codified in 11 U.S.C. § 707(b)(2), which requires the debtor to deduct from current monthly income designated expenses including the debtor's average monthly payments on account of secured debts, for purposes of determining whether a presumption of abuse arises. The debtor's average monthly secured debt payments are calculated in accordance with 11 U.S.C. § 707(b)(2)(A)(iii) as follows:

> (iii) The debtor's average monthly payments on account of secured debts shall be calculated as the sum of -
>
> (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and
>
> (II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;
>
> divided by 60.

Shortly after the enactment of BAPCPA, the issue of whether § 707(b)(2)(A)(iii) permits chapter 7 debtors to deduct payments for collateral they intend to surrender came before the courts. The majority of the cases which have addressed the issue in the chapter 7 context have found that the means test calculation under § 707(b)(2)(A) is a mechanical formula that provides a snapshot of the debtor's finances on the date the petition was filed. Secured debt payments may be deducted if they are owed on the petition date without regard to the future intent of the debtor. Courts addressing the surrender issue under chapter 7 have overwhelmingly held that the plain language of the statute compels a conclusion that the postpetition surrender of secured collateral does not prevent the debtor from deducting the secured debt expense on the means test. *See In re Benedetti*, 372 B.R. 90 (Bankr. S.D. Fla. 2007); *In re Kogler*, 368 B.R. 785 (Bankr. W.D. Wis. 2007); *In re Hayes*, 376 B.R. 55 (Bankr. D. Mass. 2007); *In re Kelvie*, 372 B.R. 56 (Bankr. D. Idaho 2007); *In re Wilkins*, 370 B.R. 815 (Bankr. C.D. Cal. 2007); *In re Randle*, 358 B.R. 360 (Bankr. N.D. Ill. 2006); *In re*

7

*Nockerts*, 357 B.R. 497 (Bankr. E.D. Wis. 2006); *In re Simmons*, 357 BR 480 (Bankr. N.D. Ohio 2006).

The means test as set forth in § 707(b)(1) and (b)(2) looks at income (six months of prepetition income) less expenses (fixed by reference to the Internal Revenue Service guidelines) and arrives at a "disposable income" figure for purposes of determining whether a filing is presumptively abusive. The cases cited above hold that the plain meaning of § 707(b)(2)(A)(iii) compels a finding that a chapter 7 debtor, for purposes of determining whether a filing is abusive, may deduct payments for collateral a debtor intends to surrender.

Unfortunately, the question of whether a debtor in a chapter 13 case should be permitted to claim a deduction for collateral the debtor intends to surrender is not so easily resolved. The difficulty arises because the requirement that a debtor calculate the debtor's "average monthly payments on account of secured debts" applies only in the calculation of *disposable income* under the means test and Congress gave no instruction as to how to integrate the chapter 7 "means test" into the calculation of *projected disposable income* as set forth in § 1325(b)(1).

11 U.S.C. § 1325(b)(1) provides as follows:

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan -

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's *projected disposable income* to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan. (emphasis added).

8

Thus, where the Trustee objects to confirmation of a plan that proposes less than a 100% dividend to unsecured creditors, the plan may not be confirmed unless all of the debtor's *projected disposable income* to be received over the life of the plan will be paid to unsecured creditors.

The phrase "projected disposable income" is not explicitly defined in the Bankruptcy Code. Before the enactment of BAPCPA, "projected disposable income" was understood to be the same as "disposable income" as defined in § 1325(b)(2). Prior to the amendment of 11 U.S.C. § 1325(b)(2), the statute read:

> (2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended -
>
> (A) for the maintenance or support of the debtor or a dependent of the debtor.

Pre-BAPCPA, courts looked to the debtor's schedules, primarily Schedules I and J, to determine the amount available after deducting expenses on Schedule J "reasonably necessary" for the support of debtor and debtor's dependents, and arrived at a "disposable income" figure which was consistent with "projected disposable income" in § 1325(b)(1)(B). *In re Lanning*, 380 B.R. 17, 20 (B.A.P. 10th Cir. 2007).

The enactment of BAPCPA threw a large monkey wrench into the well established and well understood process of determining projected disposable income. BAPCPA left the term "projected disposable income" in § 1325(b)(1)(B) but created a new definition for "disposable income" in § 1325(b)(2), which requires "disposable income" to be calculated based on the backward looking means test set forth in § 707(b)(2). 11 U.S.C. § 1325(b)(2) and (3) as amended under BAPCPA state:

> (2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended -

9

(A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and

(ii) for charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

(3) Amounts reasonably necessary to be expended under paragraph (2) shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than -

(A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

(B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or

(C) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $525 per month for each individual in excess of 4.

After BAPCPA, disposable income is defined with reference to the backward looking means test under § 707(b)(2)(A) and (B), while "projected disposable income" clearly contemplates a forward looking analysis of the debtor's income and expenses.

The case law reflects the difficulty courts have had in reconciling the calculation of "disposable income," which relies on the means test, with the calculation of "projected disposable income," which requires a forward looking analysis. However, recent cases have concluded that at least for purposes of calculating "disposable income" under § 1325(b)(2), there is no logical reason why disposable income should be calculated differently in a chapter 13 case than it is in a chapter 7 case. *See e.g., In re Quigley*, 391 B.R. 294 (Bankr. N.D. W. Va. 2008) (§ 1325(b)(3) does not alter the language or the application of § 707(b)(2)); *In re Ries*, 377 B.R. 777, 783-84 (Bankr. D. N.H. 2007) (Congress has directed the bankruptcy courts to use the same methodology under the means test to compute the disposable income for above median income debtors in both chapter 7 and chapter 13 proceedings); *In re Burmeister*, 378 B.R. 227 (Bankr. N.D. Ill. 2007) (there is no reason why the means test should be applied differently in chapter 7 and chapter 13 cases).

This Panel concurs with the decisions cited above to the extent they find that the means test is a mechanical, formulaic approach that as applied is no different in chapter 7 than it is in chapter 13. The Panel has not located any clearly expressed legislative intention that secured debt expenses deducted from the means test in chapter 7 should be different from secured debt expenses deducted from the disposable income test in chapter 13. Therefore, a chapter 13 debtor may deduct, for purposes of determining *disposable income* under § 1325(b)(2), payments for collateral the debtor intends to surrender.

However, this holding does not resolve all of the issues in this case. The surrender issue is only relevant to a determination of the Debtors' *disposable income* under § 1325(b)(2). This Panel finds that disposable income must then be compared to the Debtors' *projected disposable income*, as reflected in Debtors' income and expenses as of the effective date of the plan, as required by § 1325(b)(1)(B). This view is consistent with a growing body of case law holding that "projected disposable income" is forward looking and must be based on anticipated income over the life of the plan. *See In re Petro*, 2008 WL 4601471 (B.A.P. 6th Cir. Oct. 17, 2008) ("projected disposable income" should be calculated based on the realities of the debtor's circumstances as of confirmation and as reasonably anticipated to be during the length of the plan); *Kibbe v. Sumski* (*In re Kibbe*), 361

11

B.R. 302 (B.A.P. 1st Cir. 2007) (the term "projected disposable income" for below-median income debtors is forward looking and reality based); *In re Lanning*, 380 B.R. 17 (B.A.P. 10th Cir. 2007) (holding the same for above-median income debtors); *In re Liverman*, 383 B.R. 604 (Bankr. D. N.J. 2008); *In re DeThample*, 390 B.R. 716 (Bankr. D. Kan. 2008); *In re Briscoe*, 374 B.R. 1 (Bankr. D. Dist. Col. 2007); *In re McCarty*, 376 B.R. 819 (Bankr. N.D. Ohio 2007); *In re Fuller*, 346 B.R. 472 (Bankr. S.D. Ill. 2006); *In re Hardacre*, 338 B.R. 718, 722 (Bankr. N.D. Tex. 2006); *In re Casey*, 356 B.R. 519 (Bankr. E.D. Wash. 2006); *but see Maney v. Kagenveama* (*In re Kagenveama*), 2008 WL 2485570 (9th Cir. June 23, 2008) (the term "projected disposable income" is not a forward looking concept). Whether a debtor may deduct payments for collateral the debtor intends to surrender is an issue that affects only the calculation of *disposable income* under § 1325(b)(2).

This Panel notes that projected disposable income under § 1325(b)(1)(B) will match disposable income under § 1325(b)(2) if the debtor's income and expenses remain consistent from a date six months prior to filing through the effective date of the plan. In those cases, the amount of money available for unsecured creditors will correlate with "monthly disposable income" as reflected on line 58 of the Form 22C. However, where debtor's income and *expenses* have changed, as reflected by debtor's Schedules I and J, the amount available for unsecured creditors from "projected disposable income" may be more or less than that reflected in line 58 of Form 22C, depending on the changed circumstances of the debtor. For example, if the debtor's Schedule J reflects a rental expense rather than a mortgage payment, and the plan makes no provision for payment of a mortgage, the calculation of *projected disposable income* will not include a deduction for a house the debtor intends to surrender, even though the debtor took the deduction under the means test set forth in § 1325(b)(2).

In the present consolidated appeal, the bankruptcy court confirmed the Debtors' plans without an explanation as to whether the court had *considered both disposable income and projected disposable income*. While the bankruptcy court stated that "income and expenses calculated for above median debtors under §§ 1325 and 707(b) are largely mechanical in nature, thanks to Congress' BAPCPA amendments," the dividend to unsecured creditors in the Thomases' confirmed

plan does not match the dividend unsecured creditors would receive if the court had only considered "disposable income" based on the means test. Had the Debtors in *Thomas* been bound by their disposable income shown on Form 22C (a negative $468.38 per month), their plan payments would have generated a 0% distribution to unsecured creditors. In fact, the plan confirmed by the bankruptcy court paid at least a 20% dividend to unsecured creditors. In *Jones*, disposable income reflected on line 58 of Debtors' means test would generate a total dividend to unsecured creditors of $10,104.60 ($168.40 x 60). Since the Debtors listed unsecured debt of $50,248, this figure is consistent with the proposed 20% dividend in the plan confirmed by the bankruptcy court. However, it is unclear from the record whether the bankruptcy court confirmed the plan based solely on the disposable income calculation of § 1325(b)(2), or whether the plan was confirmed because the court concluded that disposable income was consistent with projected disposable income as reflected in Schedules I and J.

This Panel holds that if a trustee or unsecured creditor objects to the plan, the court *may not* confirm the plan if the court finds that debtor's schedules or other credible evidence require a reassessment of disposable income as determined by the means test under § 1325(b)(2) and (b)(3). Because the record below does not state the grounds on which Debtors' plans were confirmed and whether the bankruptcy court considered projected disposable income, the Panel is vacating the confirmation orders and remanding the cases for the court to address the Trustee's objections in a manner consistent with this opinion and *In re Petro*.

**B. Good Faith**

The Trustee contends that the Debtors have not proposed their plans in good faith because they are able to pay their creditors more than what they are proposing. The bankruptcy court made no specific findings of fact on this issue. In light of our ruling with respect to the calculation of disposable income as it relates to the determination of projected disposable income, we will not reach the merits of the Trustee's appeal on the issue of good faith.

## V. CONCLUSION

For the reasons stated in this opinion, the decision of the bankruptcy court is affirmed in part and reversed in part. The orders confirming the chapter 13 plans in these consolidated cases are vacated and the cases are remanded for proceedings consistent with this opinion and with *In re Petro*.